Nada I. Shamonki (Bar No. 205359)
<nshamonki@mintz.com>
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC
2029 Century Park East, Suite 3100
Los Angeles, California 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

James M. Wodarski (*admitted pro hac vice*)
<jwodarski@mintz.com>
Andrew H. DeVoogd (*admitted pro hac vice*)
<dhdevoogd@mintz.com>
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

[Full list of counsel included in signature block]

*Attorneys for Plaintiff and Counterclaim-Defendant Netlist, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| Netlist, Inc.,<br><br>*Plaintiff and Counterclaim-Defendant,*<br><br>vs.<br><br>SK hynix Inc.,<br><br>*Defendant and Counterclaim-Plaintiff,*<br><br>and<br><br>SK hynix America Inc. and SK hynix memory solutions Inc.,<br><br>*Defendants.* | Nos. 8:16-cv-01605-JLS-JCG and 8:17-cv-01030-JLS-JCG<br><br>**NETLIST, INC.'S CONSOLIDATED ANSWER TO SK HYNIX INC.'S CONSOLIDATED COUNTERCLAIMS**<br><br>District Judge: Hon. Josephine Staton |

Plaintiff Netlist, Inc. ("Netlist") hereby submits its Consolidated Answer and Affirmative Defenses in response to Defendant SK hynix Inc.'s ("SK hynix") Consolidated Counterclaims (Doc. No. 162). Each paragraph below corresponds to the same-numbered paragraph in the Counterclaims. Netlist denies all allegations in the Counterclaims, whether express or implied, that are not specifically admitted below. Netlist responds as follows:

## NATURE OF ACTION

1. To the extent an answer to this paragraph is called for, Netlist denies SK hynix's characterization of the nature of the action and denies the allegations of paragraph 1. Netlist has repeatedly offered to grant SK hynix a fair, reasonable, and non-discriminatory license to Netlist's standard-essential technology. SK hynix, however, has taken advantage of its larger size and market share to prolong negotiations in an attempt to extract a less-than-reasonable royalty rate, all while infringing Netlist's patents without paying a cent. Notably, SK hynix made many similar arguments in the co-pending International Trade Commission Investigation No. 337-TA-1023, which the ITC's Chief Administrative Law Judge Charles E. Bullock ("CALJ Bullock") rejected in his Initial Determination, dated November 14, 2017. *See* Exhibit A to Notice of Decision: Public Version of Initial Determination in Co-Pending International Trade Commission Investigation No. 337-TA-1023, ECF No. 164-1, at 181-197 (internal page numbers). Specifically, CALJ Bullock concluded both that SK hynix failed to establish that Netlist violated its RAND obligations under the JEDEC Patent Policy, and that Netlist has not "unfairly discriminated" against SK hynix. In addition, the ITC's Office of Unfair Import Investigations, which participated fully in the investigation, argued to CALJ Bullock that Netlist discharged its RAND obligations as to SK hynix.

2. To the extent an answer to this paragraph is called for, Netlist denies that SK hynix is entitled to any of the relief it seeks in paragraph 2 and denies all of the

allegations of paragraph 2. Further responding, Netlist states that it has not failed to offer SK hynix a reasonable and non-discriminatory license to Netlist's standard essential patents, and SK hynix is therefore not entitled to any of the relief it seeks.

**THE COUNTERCLAIM PARTIES**

3. On information and belief, Netlist admits the allegations of paragraph 3.

4. Netlist admits that it is a Delaware corporation with its principal place of business at 175 Technology Drive, Suite 150, Irvine, California 92618. Netlist admits that it holds patents that are relevant to memory products. Netlist admits that it has stated its intent to generate revenue, in part, by obtaining licenses for its standard-essential patents from companies practicing Netlist's patented technology. Netlist is a relatively small company in the memory products space, though it has made enormous contributions to the industry, including the technology at issue in this case. Netlist has attempted to license its standard-essential technology in order to obtain fair compensation for its innovations, and has initiated litigation out of necessity in the face of intransigent implementers, like SK hynix, of the standards into which its technology is incorporated. To the extent the allegations of paragraph 4 are meant to imply that Netlist is a "patent assertion entity" without product-based revenue, such implication is false and gratuitous. For example, Netlist's six month net product revenues for 1H 2017 exceeded $20 million. Netlist denies the remaining allegations of paragraph 4.

**JURISDICTION AND VENUE**

5. Netlist admits that SK hynix purports to plead claims arising out of an alleged breach of contract and the Declaratory Judgement Act, 28 U.S.C. §§ 2201-02, but Netlist denies any liability thereunder.

6. Netlist admits this Court has subject matter jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1332 and that the matter is between a

citizen or subject of a foreign state and citizen of Delaware. Netlist denies the remaining allegations of paragraph 6.

7. Netlist admits this Court has subject matter jurisdiction based on 28 U.S.C. § 1332. Netlist denies the remaining allegations of paragraph 7.

8. For the purposes of this action only, Netlist admits the allegations of paragraph 8.

9. Netlist does not challenge venue on these Counterclaims.

## FACTUAL BACKGROUND

### A. SK Hynix

10. Netlist is without sufficient information to admit or deny the allegations of paragraph 10 and on that basis denies them.

11. Netlist is without sufficient information to admit or deny the allegations of paragraph 11 and on that basis denies them.

### B. Netlist

12. Netlist admits it was founded in 2000 and became a publicly traded company in 2006. Netlist admits it is headquartered in California, offers various computer memory products, and had net product sales of approximately $6.9 million for the fiscal year ending January 2, 2016. Netlist denies the remaining allegations of paragraph 12.

13. Netlist admits that it currently holds over 70 U.S. and foreign patents issued and over 30 pending applications worldwide.

### C. JEDEC and Semiconductor Memory Standards

14. Netlist admits that it is a member of JEDEC. Netlist is informed and believes that SK hynix is a member of JEDEC. Netlist is without sufficient information to admit the remaining allegations of paragraph 14 and on that basis denies them.

15. Netlist admits that JEDEC purports to be a global leader for the microelectronics industry. Netlist further admits that JEDEC develops standards for semiconductor memory chips and modules, including the standards relevant in this case to which Netlist's patents are essential. Netlist is without sufficient information to admit the remaining allegations of paragraph 15 and on that basis denies them.

16. Netlist admits that JEDEC's collaborative efforts purport to "enable interoperability." Netlist is without sufficient information to admit the remaining allegations of paragraph 16 and on that basis denies them.

17. Netlist admits that JEDEC purports to have "over 50 committees and subcommittees" in which its members participate. Netlist further admits that these committees generate technical proposals for incorporation into JEDEC standards that, upon approval by the committee and JEDEC's Board of Directors, are promulgated and provided to the public. Netlist is without sufficient information to admit the remaining allegations of paragraph 17 and on that basis denies them.

18. Netlist is without sufficient information to admit the allegations of paragraph 18 and on that basis denies them.

19. Netlist is without sufficient information to admit the allegations of paragraph 19 and on that basis denies them.

20. Netlist is without sufficient information to admit the allegations of paragraph 20 and on that basis denies them.

21. Netlist admits that JEDEC has promulgated a Patent Policy reflected in Section 8.2 of JEDEC Manual No. 21R, which speaks for itself. Netlist admits that the quotation attributed to section 8.2.2.1 is correctly reproduced from its source. Netlist is without sufficient information to admit the remaining allegations of paragraph 21 and on that basis denies them.

22. Netlist admits that JEDEC has promulgated a Patent Policy reflected in Section 8.2 of JEDEC Manual No. 21R, which speaks for itself. Netlist admits that

the quotation attributed to section 8.2.2.1 is correctly reproduced from its source. Netlist is without sufficient information to admit the remaining allegations of paragraph 22 and on that basis denies them.

23. Netlist admits that JEDEC has promulgated a Patent Policy reflected in Section 8.2 of JEDEC Manual No. 21R, which speaks for itself. Netlist admits that "Potentially Essential Patent" is defined in Section 8.2.1 as: "*A patent that is reasonably believed by a subject person to contain one or more Essential Patent Claims.*" Netlist admits that "Essential Patent Claims" is defined in Section 8.2.1 as: "*Those Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard.*" Netlist is without sufficient information to admit the remaining allegations of paragraph 23 and on that basis denies them.

24. Netlist admits that JEDEC has promulgated a Patent Policy reflected in Section 8.2 of JEDEC Manual No. 21R, which speaks for itself. Netlist admits that the quotation attributed to Section A.3, Part 4 is correctly reproduced from its source. Netlist is without sufficient information to admit the remaining allegations of paragraph 24 and on that basis denies them.

25. Netlist admits that JEDEC has promulgated a Patent Policy reflected in Section 8.2 of JEDEC Manual No. 21R, which speaks for itself. Netlist admits that Section 8.2.1 states "*Disclosure of a patent is deemed to include all patents claiming priority of a single filing. The listing of foreign equivalents is optional and at the discretion of the patent holder.*" Netlist is without sufficient information to admit the remaining allegations of paragraph 25 and on that basis denies them.

26. Netlist admits that JEDEC has promulgated a Patent Policy reflected in Section 8.2 of JEDEC Manual No. 21R, which speaks for itself. Netlist admits that the quotation attributed to Section 8.2.5 is correctly reproduced from its source.

Netlist is without sufficient information to admit the remaining allegations of paragraph 26 and on that basis denies them.

27. Netlist is without sufficient information to admit the allegations of paragraph 27 and on that basis denies them.

28. Netlist admits that Section 8.2.10 of the JEDEC Patent Policy states: "The Patent Policy will be interpreted and governed under the laws of the State of New York." JEDEC's Patent Policy speaks for itself. Netlist denies the remaining allegations of paragraph 28.

**D. Netlist's RAND Commitments**

29. Netlist admits that it currently holds 71 U.S. and foreign patents issued and over 30 pending applications worldwide, some related to technologies used in LRDIMM, RDIMM, and NVDIMM memory products. Netlist admits that it owns certain patents in Germany and in China. Netlist denies the remaining allegations of paragraph 29.

30. Netlist admits that it is currently a member of JC-11, JC-16, JC-63, and JC-64. Netlist further admits that it was a member of, or attended the meetings of, committees that have developed one or more standards relevant to RDIMM and/or LRDIMM technology. Netlist denies the remaining allegations of paragraph 30.

31. Netlist admits that it has submitted License Assurance / Disclosure Forms, which state: "A license will be offered to applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard under reasonable terms and conditions that are demonstrably free of any unfair discrimination." Netlist further admits that it has disclosed at least 38 patents and 2 patent applications as essential or potentially essential to JEDEC standards. Netlist denies the remaining allegations of paragraph 31.

32. Netlist admits that it has submitted Notice of Refusal to Offer Licenses on RAND Terms forms for some patents in its portfolio. Netlist also admits that it

has withdrawn some of its Notices of Refusal and agreed to license those patents on RAND terms. Netlist denies the remaining allegations of paragraph 32.

33. Netlist admits that it has submitted License Assurance / Disclosure Forms, which state: "A license will be offered to applicants desiring to utilize the license for the purpose of implementing the JEDEC Standard under reasonable terms and conditions that are demonstrably free of any unfair discrimination." These forms speak for themselves. Netlist denies the remaining allegations of paragraph 33.

34. Netlist is unable to admit or deny the allegations of paragraph 34 because they call for a legal conclusion.

**E. Netlist's Failure to Comply with its RAND Obligations**

35. Netlist denies the allegations of paragraph 35. Netlist denies that the licensing terms it offered to SK hynix were unreasonable and/or discriminatory. SK hynix has refused to accept the reasonable and nondiscriminatory licensing terms Netlist has offered, instead leveraging its large size and market share to continue to pay nothing for its infringement of Netlist's patented technology while attempting to unfairly impose an unreasonably low royalty rate on Netlist.

36. Netlist denies the allegations of paragraph 36.

37. Netlist admits that, during the time-period alleged, it engaged in good faith negotiations with SK hynix over several years regarding an arrangement between the two companies. Netlist denies the remaining allegations of paragraph 37.

38. Netlist admits that it engaged in another round of good faith negotiations with SK hynix regarding a different arrangement between the two companies during the time-period alleged. Netlist denies the remaining allegations of paragraph 38.

39. Netlist admits it entered into a Joint Development & Licenses Agreement ("JDLA") with Samsung Electronics Co., Ltd. ("Samsung"), in November of 2015. Netlist also admits that, as a part of the agreement, Netlist received from

Samsung $8 million in cash and $15 million in the form of convertible note secured by Netlist's patents. Netlist denies any remaining allegations of paragraph 39.

40. Netlist admits it wrote SK hynix a letter on the date alleged offering a license to Netlist's patents at the royalty alleged. Netlist denies the remaining allegations of paragraph 40.

41. Netlist denies the allegations of paragraph 41.

42. Netlist admits that SK hynix demanded a license to Netlist's patents on unreasonable terms that were unacceptable to Netlist. Netlist denies the remaining allegations of paragraph 42.

43. Netlist admits that the parties continued discussing the terms of a license and the technical merits of Netlist's patents. Netlist admits that the terms on which SK hynix demanded a license to Netlist's patents were unreasonable and unacceptable to Netlist. Netlist admits that the JDLA with Samsung was not the result of a RAND negotiation. Netlist denies the allegations of paragraph 43.

44. Netlist denies that SK hynix has at all times been willing to take a license to Netlist's standard essential patents on RAND terms. SK hynix's actions demonstrate otherwise. Netlist admits that SK hynix offered the amount alleged in April 2016. Netlist denies the remaining allegations of paragraph 44.

45. Netlist admits that it made a new demand to SK hynix of the amount alleged, but denies that it was made "at the time that Netlist filed this suit." Netlist further specifically denies that this new offer was "far in excess of any reasonable royalty." To the contrary, this new offer, like Netlist's prior offer, was also reasonable and non-discriminatory. Netlist denies the remaining allegations of paragraph 45.

46. Netlist denies the allegation that it has failed to offer RAND license terms to SK hynix and has breached any RAND obligation with respect to SK hynix. To the contrary, prior to initiating any litigation Netlist negotiated with SK hynix in

good faith for months to reach agreement on a license to Netlist's patents. SK hynix refused to take a reasonable license. There has been no unfair discrimination by Netlist; the only unfairness is that, during the parties' negotiations and throughout the course of litigation, SK hynix has enjoyed unfettered use of Netlist's patented technology while paying Netlist nothing. Netlist denies the remaining allegations of paragraph 46.

**F. Netlist's Litigation Against SK Hynix**

47. Netlist admits, following failed negotiations with SK hynix, it filed a complaint with this Court on August 31, 2016. The complaint speaks for itself. Netlist denies the remaining allegations of paragraph 47.

48. Netlist admits it filed a complaint in the U.S. International Trade Commission on September 1, 2016. The complaint speaks for itself. Netlist denies the remaining allegations of paragraph 48.

49. Netlist admits it filed a second complaint with this Court, on June 14, 2017. The complaint speaks for itself. Netlist denies the remaining allegations of paragraph 49.

50. Netlist admits it filed a complaint in the Beijing Intellectual Property Court on July 11, 2017. The complaint speaks for itself. Netlist denies the remaining allegations of paragraph 50.

51. Netlist admits it filed a complaint in the District Court of Munich on July 11, 2017. The complaint speaks for itself. Netlist denies the remaining allegations of paragraph 50.

52. Netlist admits it filed a complaint in the Beijing Intellectual Property Court on August 11, 2017. The complaint speaks for itself. Netlist denies the remaining allegations of paragraph 50.

53. Netlist admits that the patents collectively asserted in the California and ITC actions are U.S. Patent Nos. 8,756,364; 8,516,185; 8,001,434; 8,359,501;

8,689,064; 8,489,837; 9,606,907 and 9,535,623. Netlist admits that the patent asserted in the Munich, Germany action is DE 20 2010 018 501 U1. Netlist admits the patent asserted in the Beijing, China actions is ZL201080039043.0. The pleadings in each of these proceedings speak for themselves. Netlist denies the remaining allegations of paragraph 53.

54. Netlist denies that its litigation against SK hynix is evidence of an intent to avoid any RAND obligations. Instead, Netlist's litigation is a result of SK hynix's continued intransigence and hold-out, efficiently infringing Netlist's patents while paying lip-service to its purported willingness to take a license. Netlist has, at all times, observed its RAND obligations with respect to SK hynix. Netlist denies the allegations of paragraph 54.

55. Netlist admits that SK hynix purports to bring the same counterclaims before this Court in both the 1605 and 1030 Central District Actions. Netlist denies that SK hynix is entitled to any of the relief it seeks and denies all of SK hynix's allegations.

## FIRST CAUSE OF ACTION

## (Breach of Contract)

56. No response to paragraph 56 is necessary. Netlist incorporates its answers to paragraphs 1-55 as though fully set forth herein.

57. Netlist denies the allegations of paragraph 57.

58. Netlist denies the allegations of paragraph 58.

59. Netlist denies the allegations of paragraph 59.

60. Netlist denies the allegations of paragraph 60.

61. Netlist denies the allegations of paragraph 61.

62. Netlist denies the allegations of paragraph 62.

63. Netlist denies the allegations of paragraph 63.

64. Netlist denies the allegations of paragraph 64.

65. Netlist denies the allegations of paragraph 65.

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment of RAND Terms for a License to Netlist's Patents Essential to JEDEC Standards)**

66. No response to paragraph 66 is necessary. Netlist incorporates its answers to paragraphs 1-65 as though fully set forth herein.

67. Netlist denies the allegations of paragraph 67.

68. Netlist denies the allegations of paragraph 68.

69. Netlist denies the allegations of paragraph 69.

70. Netlist denies the allegations of paragraph 70.

71. Netlist denies the allegations of paragraph 71.

72. Netlist denies the allegations of paragraph 72.

**THIRD CAUSE OF ACTION**

**(Declaratory Judgment that Netlist is Barred from Seeking and/or Enforcing Injunctive Relief Against SK Hynix Based on Patents Essential to JEDEC Standards)**

73. No response to paragraph 73 is necessary. Netlist incorporates its answers to paragraphs 1-72 as though fully set forth herein.

74. Netlist denies the allegations of paragraph 69.

75. Netlist denies the allegations of paragraph 75.

76. Netlist denies the allegations of paragraph 76.

77. Netlist denies the allegations of paragraph 77.

78. Netlist denies the allegations of paragraph 78.

79. Netlist denies the allegations of paragraph 79.

80. Netlist denies the allegations of paragraph 80.

81. Netlist denies the allegations of paragraph 81.

## PRAYER FOR RELIEF

Netlist denies that SK hynix is entitled to any of the relief it seeks, and specifically denies all allegations and prayers for relief requested in paragraphs 56-81 of its prayer for relief in the counterclaims.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Plaintiff and Counterclaim-Defendant Netlist alleges and asserts the following defenses in response to the allegations of the Counterclaims. Netlist reserves the right to assert any other defenses that discovery may reveal.

### FIRST DEFENSE

### (Failure to State a Claim)

Counterclaim-Plaintiffs' Counterclaims fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

### (Unclean Hands)

Counterclaim-Plaintiffs cannot prevail on their Counterclaims due to their continued bad faith patent holdout and efficient infringement. They have intentionally and willingly failed and refused to honor the *quid pro quo* underpinning the relationship between implementers of the relevant JEDEC standards and the contributors of the technology enabling those standards. All while giving lip service to a purported willingness to accept Netlist's multiple reasonable and non-discriminatory offers, Counterclaim-Plaintiffs have continued to reap historical profits from sales of products implementing Netlist's technology, technology they continue to use without authorization and without paying Netlist a cent.

**THIRD DEFENSE**

**(Equitable Defenses)**

Counterclaim-Plaintiffs' Counterclaims are barred, in whole or in part, by equitable doctrines including, for example, waiver and estoppel.

Dated: December 20, 2017

By: /s/ *Nada I. Shamonki*

James M. Wodarski (*admitted pro hac vice*)
<jwodarski@mintz.com>
Andrew H. DeVoogd (*admitted pro hac vice*)
<dhdevoogd@mintz.com>
Michael C. Newman (*admitted pro hac vice*)
<mcnewman@mintz.com>
Kristina R. Cary (*admitted pro hac vice*)
<krcary@mintz.com>
Daniel B. Weinger (*admitted pro hac vice*)
<dbweinger@mintz.com>
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

Nada I. Shamonki (Bar No. 205359)
<nshamonki@mintz.com>
MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO PC
2029 Century Park East, Suite 3100
Los Angeles, California 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

*Attorneys for Plaintiff and Counterclaim-Defendant Netlist, Inc.*

# CERTIFICATE OF SERVICE

I, Nada I. Shamonki, declare and state as follows:

I am employed with the law firm of Mintz Levin Cohn Ferris Glovsky and Popeo P.C. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to these facts under oath.

I hereby certify that on December 20, 2017, I served:

- **NETLIST INC.'S CONSOLIDATED ANSWER TO SK HYNIX INC.'S CONSOLIDATED COUNTERCLAIMS**

via email on the following individuals:

Chad S. Hummel <chummel@sidley.com>

Michael D. Hatcher <mhatcher@sidley.com>

Theodore W. Chandler <tchandler@sidley.com>

David T. Pritikin (*pro hac vice*) <dpritikin@sidley.com>

Richard A. Cederoth (*pro hac vice*) <rcederoth@sidley.com>

David Giardina (*pro hac vice*) <dgiardina@sidley.com>

Brian R. Nester (*pro hac vice*) <bnester@sidley.com>

Wonjoo Suh <wsuh@sidley.com>

Kenneth L. Nissly <knissly@nisslylaw.com>

SKHynixNetlistSidleyTeam@sidley.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 20, 2017.

*/s/ Nada I. Shamonki*
Nada I. Shamonki